# IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF NEW YORK



```
-------------------------------------------------------x
                                              )
ANTHONY  FIORANELLI,                          )
                                              )
                  Plaintiff,                  )
                                              )
v.                                            )
                                              )
                                              )
                                              )
                                              )
CBS BROADCASTING, INC.,                       )
BBC WORLDWIDE AMERICAS, INC.,                 )
T3 MEDIA, INC.,                               )
BROOK LAPPING PRODUCTIONS LTD.,               )
TESTIMONY FILMS,                              )
RTW PRODUCTIONS, LLC,                         )
PARAMOUNT PICTURE CORPORATION,                )
MORNINGSTAR ENTERTAINMENT, INC.,)
MONKEY KINGDOM LIMITED,                       )
CREATIVE DIFFERENCES, LLC,                    )
ADAMS COUNTY PRODUCTIONS LLC,                 )
TELEMACO SRL,                                 )
JVCT PRODUCTIONS, INC.,                       )
IPSE DIXIT, INC.,                             )
FIRECRACKER FILMS, LLC,                       )
A&E TELEVISIONS NETWORKS, LLC,                )
JOHN AND JANE DOES 1-10,                      )
JOHN DOE CORPORATIONS 1-10, and              )
JOHN DOE ENTITIES 1-10,                       )
                                              )
                  Defendants.                 )
-------------------------------------------------------x
```

**15  Civ.  _____**

## COMPLAINT AND JURY DEMANDED



Plaintiff Anthony Fioranelli ("Plaintiff"), by and through his undersigned counsel, files this complaint against Defendants CBS Broadcasting, Inc. ("CBS"), et al., (collectively "Defendants") and alleges as follows:

## NATURE OF THE CASE

1.   This is an action for: (a) copyright infringement as prohibited by 17 U.S.C. § 101 *et seq*; (b) unfair competition under the Trademark Act of 1946 as amended ("The Lanham Act," 15 U.S.C. §§ 1125, *et seq.*), New York General Business Laws § 349 and Common Law); (c) violation of New York's Common and Statutory Unfair Competition  Law; (d) false advertising as prohibited by the Lanham Act § 43a, 15 U.S.C. § 1125a; New York General Business Law § 350; and (e) deceptive trade practices and consumer fraud as prohibited by New York General Business Law § 349.

## PARTIES

2.   Plaintiff is an individual residing in the state of New York, who is the principal of BDP and a professional photojournalist.

3.   Upon information and belief, Defendant CBS is headquartered at 51 West 52th St, New York, New York 10019, and has illegally licensed web content including the works of Plaintiff to the other Defendants set forth hereinafter for a substantial length of time.

4.   Upon information and belief, Defendant BBC Worldwide Americas, Inc. ("BBC") is a company organized and existing under the laws of Delaware, having a place of business at 1120 Avenue of the Americas, 5th  Floor, New York, NY 10036-6700. Defendant BBC is a wholly owned subsidiary of the British Broadcasting Corporation (the "Parent Company"). BBC is

responsible for building brands, audiences, commercial returns and reputation across the world for the Parent Company through investing in, commercializing and showcasing his content around the world. BBC is a sublicensee of Defendant CBS.

5.   Upon information and belief, Defendant T3 Media, Inc. ("T3") is a company organized and existing under the laws of New York, having a place of business at 1530 16th St, 6th Floor, Denver, Colorado 80202. T3 provides one of the world's largest managed video and metadata platforms as a cloud-based service. It provides video content owners including Sony Pictures Entertainment, Fox International Channels, Fox Sports, Paramount Pictures, National Geographic and the NCAA® with services and technologies that enable them to thrive in the digital world. T3 is a sublicensee of Defendant CBS.

6.   Upon information and belief, Defendant Brook Lapping Productions Ltd. ("BLP") is a company organized and existing under the laws of the United Kingdom, having a place of business at 6 Anglers Lane, London NW5 3DG. BLP is a British TV and radio production company, based in London and a subsidiary of Ten Alps. BLP and Ten Alps are sublicensees of Defendant CBS.

7.   Upon information and belief, Defendant Testimony Films ("Testimony") is a company organized and existing under the laws of the United Kingdom, having a place of business at 12 Great George Street, Bristol, BS1 5RH, Great Britain. Testimony is a sublicensee of Defendant BBC.

8.   Upon information and belief, Defendant RTW Productions, LLC ("RTW") is a company organized and existing under the laws of California, having a place of business at 15332 Antioch St, # 427, Pacific Palisades, CA 90272. RTW is a sublicensee of Defendant BBC.

9.   Upon information and belief, Defendant Paramount Picture Corporation ("Paramount") is a television production company organized and existing under the laws of Delaware, having a place of business at 5555 Melrose Avenue, Hollywood, CA 90038. Paramount is a sublicensee of Defendant BBC.

10. Upon information and belief, Defendant Morningstar Entertainment, Inc. ("Morningstar") is a television production company organized and existing under the laws of California, having a place of business at 350 N. Glenoaks Blvd., Suite 300, Burbank, CA 91502. Morningstar is a sublicensee of Defendant BBC.

11. Upon information and belief, Defendant Monkey Kingdom Limited ("MK") is a company organized and existing under the laws of the United Kingdom, having a place of business at Tea Building, Unit 5.01, 55 Shoreditch High St, London E1 6JJ, United Kingdom. MK is a sublicensee of Defendant BBC.

12. Upon information and belief, Defendant Creative Differences, LLC. ("CD") is a company organized and existing under the laws of New York, having a place of business at 4640 Lankershim Blvd., Suite 201, North Hollywood, CA 91602-1890. CD is a sublicensee of Defendant BBC.

13. Upon information and belief, Defendant Adams County Productions LLC ("ACP") is a company organized and existing under the laws of California, having a place of business at 5200 Lankershim Blvd., Ste 800, North Hollywood, CA 91601. ACP is a sublicensee of Defendant BBC.

14.  Upon information and belief, Defendant Telemaco SRL ("Telemaco") is a company organized and existing under the laws of Italy, having a place of business at Via di Monserato 7, IT-00186 Roma. Telemaco is a sublicensee of Defendant BBC.

15. Upon information and belief, Defendant JVCT Productions, Inc. ("JVCT") is a company organized and existing under the laws of California, having a place of business at 9911 W. Pico Blvd, Ste 250 Los Angeles, CA 90035. JVCT is a sublicensee of Defendant T3.

16. Upon information and belief, Defendant Ipse Dixit, Inc. ("Ipse") is an entertainment company organized and existing under the laws of California, having a place of business at 12233 West Olympic Blvd., Ste 322, Los Angeles, CA 90064. Ipse is a sublicensee of Defendant T3.

17. Upon information and belief, Defendant Firecracker Films, LLC ("Firecracker") is a company organized and existing under the laws of New York, having a place of business at 6255 W. Sunset Blvd, Suite 1600, Hollywood, CA 90028. Firecracker is a sublicensee of Defendant T3.

18. Upon information and belief, Defendant A&E Televisions Networks, LLC ("AETN") is a company organized and existing under the laws of Delaware, having a place of business at 235 E 45th St., New York, New York 10017. AETN is a sublicensee of Defendant T3.

19. Upon information and belief, Defendants John and Jane Does are individuals, names and addresses of residences of which are unknown.

20. Upon information and belief, Defendants John Doe Corporations and Defendants John Doe Entities are corporations and other legal entities, the names and addresses of residences of which are unknown.

## JURISDICTION AND VENUE

21. This Court has subject matter jurisdiction over this action pursuant to 17 U.S.C. § 101 *et seq*, 15 U.S.C. § 1125 and 28 U.S.C. §§ 1331, 1338 and 1367. Jurisdiction over causes of action arising from violation of New York statutory and common law is conferred on this Court under

28 U.S.C. § 1338(b) because these claims are joined with substantial and related claims under Federal copyright and trademark laws.

22. Venue is proper in this District under 28 U.S.C. § 1391 because the substantial part of the events giving rise to these claims and Plaintiff's injury occurred in this District.

## FACTS RELATING TO ALL COUNTS

### Plaintiff's Productions

23. Plaintiff has been photographing events of significance in and around New York City since 1992. On September 11, 2001, Plaintiff was one of four reporters allowed into the site of The World Trade Center disaster. At the time of and shortly thereafter the destruction of the Twin Towers at risk of life and limb, Plaintiff has created a photographic memory of the events of 9/11 for posterity.  As a result of the photographic work of Plaintiff substantial copyrights were created and are presently registered to Plaintiff (Copyright Registration No. PA 1-912-285 and No. PA 1-912-286, Exhibits 1 and 2) (collectively "the Copyrighted Works"). This Work has become famous as a historical repository of what happened on that day.

24. Plaintiff has created his own commercially available documentary of those events (Copyright Registration No. 1-1729759491). Plaintiff has also made available for commercial purpose the unpublished raw footage of his photography on that day (Copyright Reg. No. 1-1730036280).

25. In addition to commercializing his own work, Plaintiff offered for a one time use of his work to Defendants CBS by contract in 2002 ONLY in a news show. That one time use long expired, i.e. in 2002.

26. The documentary prepared by Plaintiff has been available for sale since 2001-2002. The raw data has been available to no one since CBS' review of that data in 2001.

## Defendants' Conduct

27. Upon information and belief in about 2005-2006, in violation of the contract between Plaintiff and CBS, and never informing Plaintiff until about May 2014, CBS began an extensive program of sublicensing Plaintiff's works to at least 15 companies (the other Defendants herein) and to well-known television broadcasting outlets through such sublicensees, such as Netflix, the Smithsonian Channel, the British Broadcasting Company (BBC) and many others.  As the illegal licensing was extensive John Does have been added to this complaint to identify those additional retailers to be determined through discovery.

28. Upon information and belief, CBS and BLP entered into a licensing agreement. Subsequently, BLP used the footage of Plaintiff's the Copyrighted Works without authorization in his project named "911 The Day That Changed the World". The Smithsonian Channel later distributed this project.

29. Upon information and belief, on February 1, 2012, CBS and BBC entered into a licensing agreement. Subsequently, BBC used the footage of Plaintiff's the Copyrighted Works without authorization in his 60-minute project named "Conspiracy Files 9/11".

30. Upon information and belief, on June 26, 2006, BBC and Testimony entered into a licensing agreement. Subsequently, Testimony used the footage of Plaintiff's the Copyrighted Works without authorization in his 50-minute project named "The Miracle of Stairwell B".

31. Upon information and belief, on September 11, 2012, BBC and Testimony entered into a licensing agreement. Subsequently, Testimony used the footage of Plaintiff's the Copyrighted Works without authorization in his 60-minute project named "The Miracle Survivor".

32. Upon information and belief, on September 1, 2007, BBC and Testimony entered into a licensing agreement. Subsequently, Testimony used the footage of Plaintiff's the Copyrighted Works without authorization in his 60-minute project named "Crime Scene 9-11".

33. Upon information and belief, on September 22, 2004, BBC and RTW entered into a licensing agreement. Subsequently, RTW used the footage of Plaintiff's the Copyrighted Works without authorization in his 86-minute project named "Rush to War".

34. Upon information and belief, on January 27, 2006, BBC and Paramount entered into a licensing agreement. Subsequently, Paramount used the footage of Plaintiff's the Copyrighted Works without authorization in his 129-minute project named "World Trade Center".

35. Upon information and belief, on September 7, 2006, BBC and MK entered into a licensing agreement. Subsequently, MK used the footage of Plaintiff's the Copyrighted Works without authorization in his 45-minute project named "911 Liars".

36. Upon information and belief, on October 17, 2007, BBC and CD entered into a licensing agreement. Subsequently, CD used the footage of Plaintiff's the Copyrighted Works without authorization in his 45-minute project named "How It Works: Voices of 9/11".

37. Upon information and belief, on October 11, 2004, BBC and ACP entered into a licensing agreement. Subsequently, MK used the footage of Plaintiff's the Copyrighted Works without authorization in his 72-minute project named "Celsius 41.11".

38. Upon information and belief, on October 20, 2007, BBC and Telemaco entered into a licensing agreement. Subsequently, Telemaco used the footage of Plaintiff's the Copyrighted Works without authorization in his 100-minute project named "Zero: An Investigation into 911".

39. Upon information and belief, on December 5, 2008 BBC and Morningstar entered into a licensing agreement.

40. Upon information and belief, on September 28, 2012, T3 and JVCT entered into a licensing agreement. Subsequently, JVCT used the footage of Plaintiff's the Copyrighted Works without authorization in his 44-minute project named "Conspiracy Theory – Death Ray".

41. Upon information and belief, on December 20, 2012, T3 and Ipse entered into a licensing agreement. Subsequently, Ipse used the footage of Plaintiff's the Copyrighted Works without authorization in his 60-minute project named "The Untold History of the US Ch.9".

42. Upon information and belief, on December 5, 2008, T3 and AETN entered into a licensing agreement. Subsequently, AETN used the footage of Plaintiff's the Copyrighted Works without authorization in his 94-minute project named "Seven Signs".

43. Upon information and belief, on September 10, 2013, T3 and AETN entered into a licensing agreement. Subsequently, AETN used the footage of Plaintiff's the Copyrighted Works without authorization in his 30-minute project named "History Channel 911 Special".

44. Upon information and belief, T3 and Firecracker entered into a licensing agreement.

45. Upon information and belief in or about May 2014 CBS has attempted to inform all of its sublicensees of the illegal nature of his sublicensing program and has attempted to stop all further uses by such sublicensees and their retailers from that time forward. Negotiations with CBS by Plaintiff reveal that some, perhaps all, of such future use has been terminated. But that is unclear.

46. Upon information and belief CBS has informed Plaintiff that it has approached all of its sublicensees to stop additional infringement and the results of that directive remain unclear.

47. Upon information and belief neither CBS nor any of such sublicensees or retailers has paid Plaintiff any damages for violation of that illegal licensing program. Negotiations have been significantly slow by reason of the need to contact so many companies and the lack of desire by some companies to respond to information required to identify substantial damage.

48. None of CBS or the other Defendants has ever claimed that any of the work subject to such copyrights belongs to them. It has merely been converted to their use willfully without any motive, remorse, concern or payment to Plaintiff. Each of the sublicensees identified in paragraph 4 through 20 has made substantial profits individually and separately from the use of footage from Plaintiff's copyrights. None has attempted to contact Plaintiff individually and separately to correct or end the infringements. As such activities have been done without notice to Plaintiff (before approximately December 2014) and are intentionally done for profit and outside the scope of any justifiable attempt to commercialize the Copyrighted Works, Plaintiff believes such work has been willful activity for commercial gain without support.

## COUNT I

### COPYRIGHT INFRINGEMENT

49. The allegations set forth in paragraphs 1 through 48 hereof are adopted and incorporated by reference as if fully set forth herein.

50. As set forth above, Plaintiff is the legal or beneficial owner of the copyrights in the Copyrighted Works that have been, or will be, exhibited over broadcast television stations and a

variety of other media outlets. A non-exhaustive list of such television outlets in which Plaintiff owns the pertinent copyright interests are listed as aforesaid Defendants.

51. Under the Copyright Act, 17 U.S.C. § 106, in pertinent part,  Plaintiff owns the exclusive rights, among others, to reproduce in copies of his Copyrighted Works, to distribute copies to the public of their Copyrighted Works, to publicly display his Copyrighted Works.

52. Under the Copyright Act, 17 U.S.C. § 106, Plaintiff also owns the exclusive rights to authorize others to exercise the rights set forth in paragraph 51.

53. CBS violated the contract between Plaintiff and CBS for a one-time use of the Copyrighted Works. Beyond this agreement, neither Plaintiff nor any other person authorized by Plaintiff has granted any license, permission or authorization to any Sublicensees to further exercise any of the rights set forth in paragraph 51 or to authorize others to exercise such rights, respecting any other work in which Plaintiff owns copyrights.

54. The conducts of each of the defendants,  individually and separately has constituted and will constitute willful infringement of Plaintiff's exclusive rights under the Copyright Act.

55. Although CBS allegedly informed Plaintiff that it has approached other Defendants to stop all additional infringement and further uses, it is not clear any of such future uses have in fact terminated. Unless enjoined and restrained by this Court, each subsequent Sublicensees will continue to infringe Plaintiff's rights in their Copyrighted Works.

56. Upon information and belief, by it acts, Defendants have made and will continue to make substantial profits and gains to which it is not in law or in equity entitled.

57.  As a direct and proximate result of Defendants' willful infringement of Plaintiff's right in the Copyrighted Works, Plaintiff is entitled to the receive all appropriate injunctive relief, including but not limited to the relief available under 17 U.S.C. §§ 502-503.

58. Plaintiff is further entitled to the maximum statutory damages pursuant to 17 U.S.C. §§504(c) (2). Alternatively, at Plaintiff's election, Plaintiff is entitled to recover from the Defendants the damages, including attorney's fees, it has sustained and will sustain, and any gains, profits and advantages obtained by Defendants as a result of Defendants' willful acts of infringement alleged in this Complaint, including but not limited to such damages and awards as are available under 17 U.S.C. §§504-505.

## COUNT II

### INDUCEMENT TO INFRINGE FEDERAL REGISTERED COPYRIGHTS

59. The allegations set forth in paragraphs 1 through 58 hereof are adopted and incorporated by reference as if fully set forth herein.

60. Through their conducts averred herein, Defendants, willfully and recklessly, in disregard of and with indifference to Plaintiff's rights set forth in paragraph 51, infringed Plaintiff's copyrights by inducing other people to reproduce and distribute films embodying the copyrighted material without authorization in violation of Section 106 *et seq.* and Section 501 of the Copyright Act, particularly CBS.

61. CBS and other Defendants are experienced and well-known television broadcasting outlets in the industry. At a minimum, Defendants are willfully blind and have acted in reckless disregard of Plaintiff's rights set forth in paragraph 51.

62. Each infringement by CBS and other Defendants of Plaintiff's Copyrighted Works constitutes a separate and distinct act of infringement.

63. As a direct and proximate result of the infringements by Defendants, Plaintiff is entitled to damages and profits in amounts to be proven at trial.

64. Alternatively, Plaintiff is entitled to the maximum statutory damages with respect to each work infringed, or for such other amounts as may be proper under 17 U.S.C. §504.

65. Plaintiff further is entitled to recover his attorney's fees and full costs pursuant to 17 U.S.C. §505.

66. Although CBS allegedly informed Plaintiff that it has approached other Defendants to stop all additional infringement and further uses, it is not clear any of such future uses have in fact been terminated. Unless enjoined and restrained by this Court, CBS and other Defendants will continue to infringe Plaintiff's rights in their Copyrighted Works.

67. As a direct and proximate result of the foregoing acts and conduct, Plaintiff has sustained and will continue to sustain substantial, immediate and irreparable injury, for which there is no adequate remedy at law. Plaintiff is entitled to preliminary and permanent injunctive relief.


## COUNT III

## UNFAIR COMPETITION UNDER THE LANHAM ACT 15 U.S.C § 1125

68. The allegations set forth in paragraphs 1 through 67 hereof are adopted and incorporated by reference as if fully set forth herein.

69. As set forth above, Plaintiff is the legal owner of the copyrights in the Copyrighted Works among others.

70. By the actions alleged in this Complaint, especially by sublicensing Plaintiff's Work to at least 15 sublicensees (the other Defendants) and to well-known television broadcasting outlets through such sublicensees, such as Netflix, the Smithsonian channel, BBC and many others, the Defendant CBS has engaged in false designation of origin and false descriptions of fact regarding the creation and ownership of Plaintiff's footage. The sublicensees themselves have

individually published Plaintiff's Work as part of their own media products appearing in television and the internet, which are distributed throughout the United States and even in other countries like the United Kingdom or Italy because of the sublicensees being foreign companies as well.

71. Upon information and belief, such conduct limits Plaintiff's ability to interact with potential supporters and gain contributions through the sale of his own work.

72. As a result of the Defendants' unauthorized use of Plaintiff's footage, the public has been led to believe that the footage created by Plaintiff is in fact footage originated by BBC, T3 and the other sublicensees.

73. Consumers are further mistakenly led to believe that Plaintiff has authorized the use of his footage in all the media products of the sublicensees when such authorization has just been provided as a onetime use of his Work and only to Defendants CBS.

74. Defendant's wrongful and willful acts, as described above, have caused or likely to cause confusion, to cause mistake, or to deceive as to the origin of Plaintiff's footage among the public and therefore constitute unfair competition in violation of 15 U.S.C. § 1125 (a).

75. Plaintiff has been damaged by these acts in an amount to be proved at trial.

76. Plaintiff is also entitled under the Lanham Act to injunctive and equitable relief against Defendants.

## COUNT IV

### NEW YORK AND COMMON LAW UNFAIR COMPETITION

77. The allegations set forth in paragraphs 1 through 76 hereof are adopted and incorporated by reference as if fully set forth herein.

78. As set forth above, Plaintiff is the legal owner of the copyrights in the Copyrighted Works among others.

79. As described above, Defendants' conduct constitute false designations of origin and false descriptions or misleading representations that Defendants' content originate from, or are offered or licensed by, or otherwise somehow connected with Plaintiff, when in fact they are not.

80. Upon information and belief defendants' conduct deceived or is likely to deceive the purchasers and potential purchasers of Plaintiff's footage or his own work.

81. Defendants' false and misleading representations and conduct are material in that the same were and are likely to affect purchasers and potential purchasers of Plaintiff's Work.

82. Defendants have engaged in unfair competition under the common law of the State of New York.

83. Defendants' unauthorized use of Plaintiff's footage and work falsely represents that Defendants' content emanate from or are authorized by Plaintiff and places beyond Plaintiff's control the quality of this content, and the message that is associated with these media products.

84. As a direct result of said Defendants' conduct, Plaintiff has sustained and is likely to continue to sustain damages and thus constitutes common law unfair competition.

85. Plaintiff has no adequate remedy at law.

86. Plaintiff is entitled to exemplary and punitive damages by reason of Defendants' willful, reckless, deliberate and intentional conduct.

## COUNT V

## CONVERSION

87. The allegations set forth in paragraphs 1 through 86 hereof are adopted and incorporated by reference as if fully set forth herein.

88. Plaintiff has a possessory right and interest in all illegal copyrighted works in the hands of Defendants or any other person selling or distributing such film.

89. None of the Defendants has claimed that any of the work subject to such copyrights belongs to them. Defendants' conducts constitute a conversion by unauthorized use of Plaintiff's exclusive right and interest subject to the Copyright Act, 17 U.S.C. § 106.

90. Further, the conduct of each defendant constitutes conversion because each has deprived, or will deprive Plaintiff of his property. The profits that are outside the scope of any justifiable attempt to commercialize the work for Plaintiff from the sale of those illegally licensed films constitute such property and are recoverable by Plaintiff.

91. As a result of Defendants' aforesaid acts of wrongful conversion, Defendants are therefore liable for having wrongfully converted these copies of films and monies and are now obligated to return all such films and monies to Plaintiff.


## COUNT VI

### VIOLATION OF NEW YORK'S COMMON STATUTORY UNFAIR

### COMPETITION LAW

92. The allegations set forth in paragraphs 1 through 91 hereof are adopted and incorporated by reference as if fully set forth herein.

93. New York General Business Law § 349 prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" in New York State.

94. By acting as an broadcasting/entertainment company, all above Defendants conduct "business" or provide a "service" within the meaning of New York General Business Law § 349.

95. Upon information and belief Defendants have engaged and continues to engage in one or more of the following deceptive acts and practices in connection with these broadcasting/entertainment services regarding Plaintiff's footage:

    a.   Misrepresenting to the public that the Defendant CBS has the rights for licensing and airing Plaintiff's footage to BBC and others.

    b.   Misrepresenting to the public that Defendant CBS, T3 and others have the rights to sublicense the content to all the sublicensees.

    c.   Misrepresenting to the public that the sublicensees themselves have the rights to use Plaintiff's footage in their own movie productions.

96. Such actions and failures to act have caused foreseeable, and proximate damages to Plaintiff and thus Defendants are engaging in deceptive conduct in violation of New York General Business Law § 349.


## COUNT VII

### FALSE ADVERTISING UNDER NEW YORK'S GENERAL BUSINESS LAW

97. The allegations set forth in paragraphs 1 through 104 hereof are adopted and incorporated by reference as if fully set forth herein.

98. Upon information and belief in connection with the marketing and advertising of Plaintiff's footage, in violation on N.Y. Gen. Bus. Law § 350, Defendants have intentionally and willfully made, published, disseminated, circulated and placed before the purchasing public advertisements containing false, deceptive and misleading statements about both his own products as well as Plaintiff's content in the context of commercial marketing in the State of New York and elsewhere.

{00039889.DOCX;1}

99. Upon information and belief by reason of Defendants' conduct, Plaintiff has suffered and will continue to suffer damage to his business, reputation and goodwill.

100.        Pursuant to N.Y. Gen. Bus. Law § 350(e), Plaintiff is entitled to enjoin Defendants' unlawful conduct as well as obtain damages, costs, disbursements and attorney's fees.


## COUNT VIII

### INTERFERENCE WITH CONTRACTUAL RELATIONS

101.        The allegations set forth in paragraphs 1 through 108 hereof are adopted and incorporated by reference as if fully set forth herein.

102.        Upon information and belief, Plaintiff has created his own commercially available documentary.

103.        Upon information and belief, CBS and the other Defendants have entered into numerous invalid agreements for unauthorized use of the films embodying the copyrighted material of Plaintiff. They were aware of these agreements.

104.        Upon information and belief, CBS and other Defendants knowingly and willfully interfered with Plaintiff's contract with CBS by their illegal conduct of entering agreements, or licensing other parties to use films embodying the copyrighted material without authorization.

105.        CBS and other Defendants are experienced and well-known television broadcasting outlets in the industry. At a minimum, Defendants have acted with willful blindness and have in reckless disregard of Plaintiff's rights set forth to enter those agreements.

106.     Plaintiff is without an adequate remedy at law, and these actions of CBS and the other Defendants' continued interference will irreparably harm Plaintiff unless CBS and the other Defendants are enjoined by the Court from the actions complained of herein.

107.     As a result of CBS and other Defendants' aforesaid conducts, Plaintiff has suffered monetary damages in an amount to be determined at trial.

## COUNT IX

## INTERFERENCE WITH PROSPECTIVE ADVANTAGE

108.     The allegations set forth in paragraphs 1 through 115 hereof are adopted and incorporated by reference as if fully set forth herein.

109.     Upon information and belief, Plaintiff has created his own commercially available documentary.

110.     Plaintiff had a reasonable expectation that it would maintain or enter into valid contracts with certain parties, and a reasonable expectation of economic benefit or advantage from such contracts.

111.     Upon information and belief, CBS and the other Defendants have entered into numerous valid agreements for unauthorized use of the films embodying the copyrighted material of Plaintiff. They were aware of these agreements.

112.     Upon information and belief, CBS and other Defendants knowingly and willfully interfered with Plaintiff's ability to contract and to defeat Plaintiff's expectancies by their illegal conduct of entering agreements, or licensing other parties to use media productions embodying the copyrighted material without authorization.

113.    CBS and other Defendants are experienced and well-known television broadcasting outlets in the industry. At a minimum, Defendants have acted with willful blindness and in reckless disregard of Plaintiff's rights set forth, in entering those agreements.

114.    Plaintiff is without an adequate remedy at law, and the actions of CBS and the other Defendants' continued interference will irreparably harm Plaintiff unless CBS and the other Defendants are enjoined from the actions complained of herein.

115.    As a result of the actions of CBS and other Defendants' aforesaid conduct, Plaintiff has suffered monetary damages in an amount to be determined at trial.

## COUNT X

### BREACH OF CONTRACT

116.    The allegations set forth in paragraphs 1 through 123 hereof are adopted and incorporated by reference as if fully set forth herein.

117.    As set forth above, to commercializing his own work, Plaintiff entered into a valid and binding written agreement with CBS, for a one time use of his work and that one time use long expired, i.e. in 2002.

118.    CBS has breached his agreement with Plaintiff by engaging in unauthorized distribution and licensing of Plaintiff's Copyrighted Works towards numerous Sublicensees.

119.    Plaintiff has fully performed his obligation under the agreement.

120.    As a result of CBS's aforesaid breach of the agreement, Plaintiff has been irreparably harmed and has no adequate remedy at law.

121.    In addition, Plaintiff has suffered monetary damages in an amount to be determined at trial.

## COUNT XI

### UNJUST ENRICHMENT

122.     The allegations set forth in paragraphs 1 through 129 hereof are adopted and incorporated by reference as if fully set forth herein.

123.     As set forth above, Plaintiff is the legal owner of the copyrights in the Copyrighted Works among others.

124.     As set forth above, Defendants engaged in a wrongful scheme to use and license the Work of Plaintiff. Under these circumstances it would be unfair and would unjustly enrich Defendants to retain and/or trade on Plaintiff's footage without allowing for reasonable commissions to be assessed in favor of Plaintiff.

125.     Upon information and belief defendant CBS has been enriched by the illegal licensing of Plaintiff's content to BBC and T3. Upon information and belief BBC and T3 and their buyers have also been enriched by the licensing of footage to the sublicensees. Upon information and belief all Defendants have been enriched by the use of Plaintiff's footage in media products. The circumstances are such that equity and good conscience require the Defendants to make restitution in an amount to be proven at trial.

## COUNT XII

### WILLFUL INTENTIONAL TORT/LACK OF DUE DILIGENCE

126.     The allegations set forth in paragraphs 1 through 133 hereof are adopted and incorporated by reference as if fully set forth herein.

127.     As set forth above, Plaintiff is the legal owner of the copyrights in the Copyrighted Works among others.

128.     As alleged above, Defendant CBS had a contract with Plaintiff from 2002. In this contract the parties just agreed for a one time use of Plaintiff's work in addition to commercializing his footage. The raw data however should not have been available to any one since CBS' review of that data in 2001-2002.

129.     Although never informing Plaintiff until about May 2014 and never having any rights to do this, CBS began an extensive program of sublicensing Plaintiff's Work to the other Defendants BBC and T3 and also to well-known television broadcasting outlets through such sublicensees.

130.     BBC and T3 themselves also sublicensed the work of Plaintiff to many sublicensees, the other Defendants.

131.     Neither CBS nor any of such sublicensees or retailers has paid Plaintiff any damages for violation of that illegal licensing program.

132.     With this behavior all Defendants individually and separately showed reckless disregard for Plaintiff's footage and work, and engaged in willful and intentional tortious actions. At least CBS must have known that they had no rights to license Plaintiff's footage because of the contract in 2002. It was very clear that the agreement was valid for a one time use and just for the one time use by CBS. CBS, as one of the largest entertainment media companies must have been clear that the act of licensing Plaintiff's footage to any other broadcasting outlets without securing all the rights before doing so, was contrary to law.

133.     Upon information and belief CBS had knowledge of the individual situation of Plaintiff and that he was one of the four reporters who risked his life in the World Trade Center disaster. Shortly thereafter Plaintiff created a photographic memory of the events of 9/11 for

posterity. Upon information and belief CBS had also knowledge that copyrights were created of this work and presently owned by Plaintiff.

134.     Over the years since 2001 Plaintiff has made his historical repository available for commercial purposes. Because of the individual actions of each of the Defendants, they have prevented Plaintiff from successfully establishing or maintaining his own business relationships with other broadcasting outlets. Because of the conduct of CBS and the other Defendants, this opportunity has been substantially diminished in value to Plaintiff.

135.     For all said circumstances, CBS had no privilege to act as it did. They also acted with knowledge of the existence of the contract from 2002. Defendants have caused damages regarding the Plaintiff's business relationships with third parties.

## **PRAYER FOR RELIEF**

136.     Wherefore Plaintiff requests that this Court:

a) enter an Order preliminarily and permanently enjoining Defendants from continued acts of copyright infringement, unfair competition, false advertising, and from further violations of any of the Federal and State Laws cited herein;

b) order the immediate return or destruction of all illegal copyrighted the Copyrighted Works in the hands of Defendants or any person selling or distributing any media products which is subject to a violation of 17 U.S.C. § 101 *et seq* and 15 U.S.C. § 1125, and any of the state and common laws herein;

c) award to Plaintiff Defendants' profits from the sale of their illegally licensed media products intended to imitate and substantially take away from the good will and rights of Plaintiff;

d) award statutory and other damages adequate to compensate Plaintiff for Defendants' acts

of copyright infringement, unfair competition, and violation of federal and state laws

cited herein and a proper amount of statutory and punitive exemplary damages;

e) apply a punitive standard to Defendants' conduct and allow for an increase of exemplary

damages and attorneys fees in connection with such willful behavior pursuant to 17

U.S.C. § 504-505, 15 U.S.C. § 1125(a), New York General Business Law § 349 and

common law;

f) assess interest upon the damages so computed including prejudgment interest; and

g) order such other relief as Court deems necessary and proper.

Dated: New York, New York          By: _____
       February 9, 2015          Maxim H. Waldbaum, Esq. (MH4615)
                                 Robert D. Katz, Esq. (RK5155)
                                 *Attorneys for Plaintiff*
                                 Eaton & Van Winkle LLP
                                 3 Park Avenue, 16th Floor
                                 New York, New York 10016
                                 mwaldbaum@evw.com
                                 rkatz@evw.com
                                 Tel.: (212) 779-9910
                                 Fax: (212) 779-9928