```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/19/2017
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
                                                         :
ANTHONY FIORANELLI,                                      :
                                          Plaintiff,     :
                                                         :
             -v-                                         :    15-CV-952 (VSB)
                                                         :
CBS BROADCASTING INC., BBC                               :    MEMORANDUM & ORDER
WORLDWIDE AMERICAS, INC.,                                :
T3MEDIA, INC., BROOK LAPPING                             :
PRODUCTIONS LTD., TESTIMONY                              :
FILMS, RTW PRODUCTIONS, LLC,                             :
PARAMOUNT PICTURES                                       :
CORPORATION, MORNINGSTAR                                 :
ENTERTAINMENT, INC.,                                     :
MONKEY KINGDOM LIMITED,                                  :
CREATIVE DIFFERENCES, LLC, ADAMS                         :
COUNTY PRODUCTIONS LLC,                                  :
TELEMACO SRL, JVCT PRODUCTIONS,                          :
INC., IPSE DIXIT, INC., FIRECRACKER                      :
FILMS, LLC, A&E TELEVISION                               :
NETWORKS, LLC, JOHN AND JANE                             :
DOES 1-10, JOHN DOE CORPORATIONS                         :
1-10, and JOHN DOE ENTITIES 1-10,                        :
                                                         :
                                          Defendants.    :
                                                         :
-------------------------------------------------------- X

Appearances:

Maxim H. Waldbaum
Robert D. Katz
Eaton & Van Winkle LLP
New York, New York
*Counsel for Plaintiff*

Robert Penchina
Levine, Sullivan, Koch & Schulz, LLP
New York, New York
*Counsel for Defendants*

1

VERNON S. BRODERICK, United States District Judge:

Plaintiff Anthony Fioranelli brings this action against Defendants CBS Broadcasting, Inc. ("CBS"), BBC Worldwide Americas, Inc. ("BBC"), T3 Media, Inc. ("T3 Media"), Brook Lapping Productions Ltd., Testimony Films, RTW Productions, LLC, Paramount Picture Corporation, Morningstar Entertainment, Inc., Creative Differences, LLC, Adams County Productions LLC, Telemaco SRL, JVCT Productions, Inc., Ipse Dixit, Inc., Firecracker Films, LLC, A&E Televisions Networks, LLC, John and Jane Does 1-10, John Doe Corporations 1-10, and John Doe Entities 1-10 (collectively "Defendants")[1] alleging: (1) copyright infringement (Count One), inducement to infringe federally registered copyrights (Count Two), Lanham Act unfair competition (Count Three), New York and common law unfair competition (Count Four), New York statutory unfair competition (Count Five), New York General Business Law false advertising (Count Six), interference with contractual relations (Count Seven), interference with prospective advantage (Count Eight), unjust enrichment (Count Ten), willful intentional tort/lack of due diligence against all Defendants; and (2) breach of contract against Defendant CBS (Count Nine). Currently pending before me is Defendants' motion to dismiss all counts. (Doc. 58.) Because I find that Plaintiff has adequately plead copyright infringement, Defendants' motion to dismiss those claims is denied. In addition, because Plaintiff failed to adequately plead inducement to infringe copyright against Defendants Brook Lapping Productions Ltd., Testimony Films, RTW Productions, LLC, Paramount Picture Corporation, Morningstar Entertainment, Inc., Creative Differences, LLC, Adams County Productions LLC, Telemaco SRL, JVCT Productions, Inc., Ipse Dixit, Inc., Firecracker Films, LLC, and A&E Televisions

---

[1] Plaintiff also initially brought this action against Monkey Kingdom Limited, but voluntarily dismissed Monkey Kingdom Limited from the action without prejudice on October 1, 2015. (Doc. 57.)

Networks, Defendants' motion to dismiss that claim against these defendants is granted. Defendants' motion to dismiss Plaintiff's Lanham Act and state law claims is also granted, except I find Plaintiff has adequately pled his breach of contract claim against CBS. Therefore, Defendants' motion, (Doc. 58), is GRANTED IN PART AND DENIED IN PART.

## I.     Factual Background[2]

Plaintiff Anthony Fioranelli is a professional photojournalist. (Compl. ¶ 2.)[3] On September 11, 2001, Plaintiff was one of four reporters allowed to enter the World Trade Center site. (*Id.* ¶ 28.) Plaintiff took numerous photographs of the scene on that day and compiled them into a photographic work for which he registered copyrights in 2014. (*Id.* ¶ 28, Exs. 1, 2.) Specifically, Plaintiff copyrighted both his own commercially available documentary of the events, as well as raw footage of the photographs he took that day ("9/11 Material"). (*Id.* ¶ 29.)

On March 7, 2002, Plaintiff and CBS entered into a settlement agreement to resolve a law suit filed by Plaintiff in New York County Civil Court related to the 9/11 Material, and as part of that settlement Plaintiff provided a limited, nonexclusive license to CBS to use his work ("License Agreement").[4] (*Id.* ¶¶ 32, 56-57, Ex. B.) Specifically, the License Agreement provided, in relevant part, that

> Fioranelli hereby grants to CBS, effective as of the date of this Agreement, a non-exclusive, irrevocable, perpetual worldwide right and license to use the Footage in all regularly-scheduled and breaking news programming and all news magazine

---

[2] I assume Plaintiff's allegations to be true for purposes of this motion. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002). My references to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

[3] "Compl." refers to Plaintiff's Amended Complaint and Jury Demanded. (Doc. 53.)

[4] "License Agreement" or "Lic. Agree." refers to the "Settlement Agreement and Release" between Plaintiff and CBS attached to the Amended Complaint as Exhibit B. Because the License Agreement with CBS is attached to the Amended Complaint, I may properly consider it in connection with this motion to dismiss. *See Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 100 (2d Cir. 2015) (noting that a court evaluating a motion to dismiss may "consider 'any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference . . . and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit.'" (quoting *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000))).

> programs (such as, without limitation, 60 MINUTES and 48 HOURS), and in the advertising, publicity and promotions therefor, produced by CBS owned television stations and CBS News, in all media now known or hereafter developed, except as provided herein. It is understood and agreed by and between the parties that the right and license granted herein does not include authorization to use the Footage in CBS Entertainment Division programming, including docudramas, nor in CBS News documentary specials. . . . It is understood and agreed by and between the parties that the right and license granted herein does not include authorization to use the Footage in programs produced by CBS News Productions for third party clients; provided however, that in the event that despite commercially reasonable efforts to exclude the Footage from such programs, Footage is included in such programs, CBS shall pay Fioranelli (or his heirs, executors, assigns, agents, affiliated companies, successors, or successors in interest) $3000 per minute (or part thereof) for each minute used within the program, for rights in all media, now known or hereafter developed, in perpetuity. Within twenty (20) days of the initial broadcast of any program produced by CBS News Productions devoted to the subjects of the attacks on the World Trade Center or the events of September 11, 2001, CBS shall provide to Fioranelli a VHS time-coded copy of such program.

(*Id*. Ex. B ¶ 4(a), (b).)

Plaintiff contends that in or about 2005-2006, in violation of the License Agreement, CBS sublicensed some or all of the 9/11 Material to at least fifteen companies, who constitute the other defendants named in Plaintiff's complaint. (*Id.* ¶ 34.) Plaintiff also contends that the footage was inappropriately licensed to other entities, necessitating the inclusion of John Doe defendants in the Amended Complaint. (*Id.*) Plaintiff identifies specific examples of licensing of his footage which violated his copyright. (*Id.* ¶¶ 35-51.)

## II. Procedural History

Plaintiff filed a complaint in this matter on February 9, 2015. (Doc. 1.) On May 1, 2015, Defendants CBS, BBC, T3 Media, MorningStar Entertainment, LLC, and A&E Television Networks, LLC filed a pre-motion letter with Judge Edgardo Ramos indicating their intention to file a motion to dismiss.[5] (Doc. 21.) On that same day, Defendant Testimony Films also filed a

---

[5] On May 4, 2015, this case was reassigned to me. (ECF Entry May 4, 2015.)

pre-motion letter regarding its intention to file a motion to dismiss. (Doc. 22.) Then on May 5, 2015, Defendant Ipse Dixit, Inc. filed a letter regarding its proposed motion to dismiss. (Doc. 25.) On May 6, 2015, Plaintiff filed two letters, one responding to the letter of Defendant Testimony Films concerning its proposed motion to dismiss, (Docs. 26), and the other to the letter of Defendants CBS, BBC, T3 Media, MorningStar Entertainment, LLC, and A&E Television Networks, LLC related to their proposed motion to dismiss, (Doc. 27). Plaintiff also filed a response to the letter of Defendant Ipse Dixit, Inc. concerning its proposed motion to dismiss on May 7, 2015. (Doc. 28.) That same day, I issued an endorsement scheduling a pre-motion conference to discuss all of the contemplated motions to dismiss. (Doc. 29.) I held that conference on June 17, 2015, and directed the parties to submit a proposed briefing schedule by June 19, 2015. (ECF Entry June 17, 2015.) On June 19, 2015, the parties submitted a proposed briefing schedule, which called for Defendants to submit their motions to dismiss by July 31, 2015, Plaintiff to either amend his complaint or file opposition briefs by September 9, 2015, and Defendants to file their reply briefs, if any, by September 25, 2015. (Doc. 44.) I approved this schedule on June 22, 2015, (Doc. 45), and Defendants submitted their motions and accompanying papers on July 31, 2015, (Docs. 49-52).

On August 28, 2015, Plaintiff filed an amended complaint ("Amended Complaint") rather than an opposition to Defendants' motions, (Doc. 53), so I denied Defendants' motions to dismiss on August 31, 2015 with leave to refile, (Doc. 54). On September 10, 2015, Defendants filed a letter seeking leave to refile, which included a briefing schedule agreed upon by the parties. (Doc. 55.) I approved the proposed briefing schedule on September 11, 2015. (Doc. 56.) On October 1, 2015, I so ordered a stipulation between the parties voluntarily dismissing Defendant Monkey Kingdom Ltd. without prejudice. (Doc. 57.) On October 2, 2015,

Defendants filed their motion to dismiss and accompanying papers.  (Docs. 58, 59.)  On November 2, 2015, Plaintiff requested additional pages for his response brief, (Doc. 60), and I granted this requested on November 3, 2015, (Doc. 62).  Plaintiff also filed his response brief on November 3, 2015.  (Doc. 61.)  Defendants filed their reply on November 20, 2015, (Doc. 63), and filed a notice alerting me to supplemental authority in further support of their motion to dismiss on December 8, 2015, (Doc. 66).  On December 1, 2016, the parties filed a joint letter requesting a decision.  (Doc. 68.)  Defendants filed a Notice of Supplemental Authority on January 11, 2017, (Doc. 69), and Plaintiff filed a Notice of Supplemental Authority and Response on January 12, 2017, (Doc. 70).

### III. Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  This standard demands "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable."  *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor.  *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  A complaint need not make

"detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).  Finally, although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions."  *Id.*

## IV. Discussion

Defendants contend that all of Plaintiff's claims must fail, and in their briefing divide their arguments into three distinct sections related to the allegations in the Amended Complaint: (1) Plaintiff's copyright infringement and inducement claims; (2) Plaintiff's Lanham Act claim; and (3) Plaintiff's state law claims.  Defendants also argue that Plaintiff is not entitled to statutory damages or attorney's fees for his copyright infringement claims.  I address each of Defendants' arguments below.

### A. *Plaintiff's Copyright Infringement and Inducement Claims*

#### 1. Infringement

Defendants argue that Plaintiff fails to state a copyright infringement claim because the allegations in the Amended Complaint amount to nothing more than a claim that CBS and the other Defendants breached the License Agreement between Plaintiff and CBS.  (Defs.' Br. at 7.)[6] The gravamen of this argument is that the License Agreement includes a provision that provides for payment to Plaintiff if CBS, "despite commercially reasonable efforts," included Plaintiff's footage in "programs produced by CBS News Productions for third party clients."  (Lic. Agree. ¶ 4(b).)  In short, Defendants contend that Plaintiff merely asserts that Defendants violated a covenant of the License Agreement, and therefore Plaintiff cannot maintain an action for

---

[6] "Defs.' Br." refers to the Memorandum of Law in Support of Defendants' Rule 12(b)(1) and 12(b)(6) Motion to Dismiss Plaintiff's Amended Complaint for Failure to State a Claim.  (Doc. 59.)

copyright infringement.  (Defs.' Br. at 8.)

In response, Plaintiff contends that the actions of Defendants went far beyond what the terms of the License Agreement permit.  (Pl.'s Br. at 7.)[7]  Specifically, Plaintiff notes that the relevant penalty provision of the License Agreement involves the use of his footage in "programs *produced by CBS news production* for third party clients."  (*Id.*)  He argues that the contract plainly did not contemplate CBS sublicensing his footage to other companies, and that he can therefore maintain a claim for copyright infringement with regard to those actions.  (*Id.*)

Plaintiff is correct, and I find his interpretation of the License Agreement is consistent with its terms.

When a copyright owner grants a nonexclusive license, he generally "waives his right to sue the licensee for copyright infringement."  *Graham v. James*, 144 F.3d 229, 236 (2d Cir. 1998).  "However, if 'a license is limited in scope and the licensee acts outside the scope, the licensor can bring an action for copyright infringement.'"  *BroadVision, Inc. v. Med. Protective Co.*, No. 08 Civ. 1478(WHP), 2010 WL 5158129, at *3 (S.D.N.Y. Nov. 23, 2010) (quoting *Jacobsen v. Katzer*, 535 F.3d 1373, 1380 (Fed. Cir. 2008)); *see also Mavullo v. Gruner & Jahr*, 105 F. Supp. 2d 225, 228 (S.D.N.Y. 2000) ("[A] licensor may bring a claim for infringement where a licensee uses copyrighted material beyond the scope of a license.").

The parties do not dispute that the License Agreement provides a license to CBS with regard to the 9/11 Material being used by CBS for CBS programming, and that such a license "immunizes [CBS] from a charge of copyright infringement, provided that [CBS] uses the copyright as agreed with [Fioranelli]."  *Davis v. Blige*, 505 F.3d 90, 100 (2d Cir. 2007) (citing

---

[7] "Pl.'s Br." refers to the Plaintiff's Response to Defendants' Motion to Dismiss the Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  (Doc. 61.)

*Graham v. James*, 144 F.3d 229, 236 (2d Cir. 1998)).  Plaintiff's contentions, however, involve conduct wholly outside the scope of the License Agreement.  He alleges that in or about 2005 or 2006 "CBS began an extensive program of sublicensing Plaintiff's works to at least 15 companies (the other Defendants herein)."  (Compl. ¶ 34.)  Plaintiff also asserts that CBS entered into agreements with BLP and BBC that resulted in the use of Plaintiff's works outside of a CBS news production.  (Compl. ¶¶ 35-36.)  The License Agreement contemplates CBS using the 9/11 Material in their own news programming,[8] but does not include terms giving CBS the right to license or sublicense Plaintiff's footage without such footage being included in a CBS-produced news segment.  In other words, CBS has no right to use or license the use of the 9/11 Material in any non-CBS produced news piece under the License Agreement.  Indeed, by its terms the License Agreement contemplates that only certain divisions of CBS could use Plaintiff's footage, stating that "the right and license granted herein does not include authorization to use the Footage in CBS Entertainment Division programming, including docudramas, nor in CBS News documentary specials."  (Lic. Agree ¶ 4(a).)  The allegations in the Amended Complaint support the claim that CBS took actions beyond the scope of the Licensing Agreement, and such contentions can, if proved, sustain a claim for copyright infringement.[9]  *See Wu v. Pearson Educ., Inc.*, 277 F.R.D. 255, 267 (S.D.N.Y. 2011) ("[W]hen a license is limited in scope, exploitation of the copyrighted work outside the specified limits constitutes infringement."

---

[8] Specifically, the License Agreement provides that Plaintiff "grants to CBS, effective as of the date of this Agreement, a non-exclusive, irrevocable, perpetual worldwide right and license to use the Footage in all regularly-scheduled and breaking news programming and all news magazine programs (such as, without limitation, 60 MINUTES and 48 HOURS), and in the advertising, publicity and promotions therefor, produced by CBS owned television stations and CBS News, in all media now known or hereafter developed, except as provided herein." (Lic. Agree. ¶ 4(a).)

[9] Defendants have not moved to dismiss Plaintiff's breach of contract cause of action and therefore concede that Plaintiff can pursue a claim for breach of contract against CBS for any uses of the 9/11 Material that violated the terms of the Licensing Agreement.

(quoting Nimmer on Copyright § 10.15)); *Marshall v. New Kids on the Block P'ship*, 780 F. Supp. 1005, 1009 (S.D.N.Y. 1991) ("Case law in this Circuit indicates that a copyright licensee can make himself a 'stranger' to the licensor by using the copyrighted material in a manner that exceeds either the duration or the scope of the license."). Similarly, Defendants other than CBS cannot contend they are insulated from claims of copyright infringement by the License Agreement with Plaintiff because they are not parties to the License Agreement, and it does not contemplate them being beneficiaries. Therefore, Defendants' motion to dismiss is denied with respect to Plaintiff's claim for copyright infringement.

### 2. Inducement

Defendants argue that Plaintiff cannot maintain his inducement claims because he has not adequately pled a predicate act of direct infringement. (Defs.' Br. at 10.) Since I have found that the allegations in the Amended Complaint adequately plead direct infringement, this argument is moot and I need not consider it further. However, that does not end the inquiry because Defendants also argue that, even if I find Plaintiff has stated adequate direct infringement claims, Plaintiff's inducement claims still fail as to any Defendants other than CBS, BBC, and T3Media. (*Id.* at 11.) Plaintiff does not directly respond to this argument. Instead, Plaintiff merely states "in addition to direct copyright infringement by all of these defendants, both CBS and BBC are inducing the others to infringe." (Pl.'s Br. at 9.)

Here, Defendants are correct; Plaintiff's claim for inducement against all Defendants other than CBS, BBC and T3Media must fail. The Amended Complaint alleges that CBS, BBC, and T3Media sublicensed the 9/11 Material without authorization to other Defendants, (Compl. ¶¶ 4-23), and therefore Defendants concede that if I find that the allegations of direct infringement are sufficient Plaintiff may properly maintain inducement claims against these three

Defendants, (Defs.' Br. at 11). Plaintiff fails to identify how Defendants other than CBS, BBC and T3Media have induced infringement by others. The only allegation in Plaintiff's Amended Complaint that could arguably be read as alleging inducement by these Defendants states that "all Defendants introduced [sic] retailers to continue this illegal conduct down the chain of sale and commit multiple copying infringements up to and including the consumer level." (Compl. ¶ 71.) Plaintiff fails to identify such retailers or the specific conduct Defendants took with regard to these unidentified retailers. This barebones, conclusory allegation is insufficiently specific to state a plausible inducement claim against the other Defendants. *See Premier Fabrics, Inc. v. Woodland Trading Inc.*, 42 F. Supp. 3d 549, 555 (S.D.N.Y. 2014).

### B. *Plaintiff's Lanham Act Claim*

Defendants contend that the Supreme Court's decision in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003), precludes Plaintiff's Lanham Act claim because Plaintiff is merely trying to use the Lanham Act "as an end run around the copyright laws or to add another layer of protection to copyright holders." (Defs.' Br. at 13 (quoting *Agence France Presse v. Morel*, 769 F. Supp. 2d 295, 307 (S.D.N.Y. 2011).) Further, they note that the Lanham Act "protects only 'the producer of the *tangible goods* that are offered for sale, and *not [ ] the author* of any idea, concept, or communication embodied in the goods." (*Id.* (quoting *Bill Diodato Photography, LLC v. Kate Spade, LLC*, 388 F. Supp. 2d 382, 395 (S.D.N.Y. 2005) (emphasis in original).)

Plaintiff claims that *Dastar* is inapplicable because he is not seeking to add another layer of protection, but rather is seeking to address the activity of Defendants that directly affected his business and not just his copyright rights. (Pl.'s Br. at 10.) Further, Plaintiff notes that there was no copyright registration regarding the material at issue in *Dastar*, unlike the registration here.

11

(*Id.* at 11.)  Finally, Plaintiff argues that he is the producer of a tangible good—his 9/11 footage—rather than an idea or communication.  (*Id.*)

Defendants are correct.  *Dastar* bars Plaintiff's claim here, and Plaintiff is not the producer of a tangible good within the meaning of the Lanham Act.  As an initial matter, courts in this district have rejected the argument that the holding in *Dastar* should be limited to non-copyrighted material or copyrighted material that have entered the public domain because "the Supreme Court did not articulate any distinction between copyrighted and uncopyrighted material [in *Dastar*]."  *Atrium Grp. De Eficiones y Publicaciones, S.L. v. Harry N. Abrams, Inc.*, 565 F. Supp. 2d 505, 512-13 (S.D.N.Y. 2008); *see also, e.g.*, *Silverstein v. Penguin Putnam, Inc.*, 522 F. Supp. 2d 579, 601 n.12 (S.D.N.Y. 2007) ("*Dastar*'s holding does not seem to turn on the copyright status of the reproduced material."); *Antidote Int'l Films, Inc. v. Bloomsbury Publ'g, PLC*, 467 F. Supp. 2d 394, 398-400 (S.D.N.Y. 2006) ("*Dastar* holds that the fact that copyright law covers 'communicative products' prevents these products from being accorded 'special treatment' under the Lanham Act regardless of whether a viable copyright claim exists in a given case.").

I agree with the *Atrium* court that "the Supreme Court would have declined to extend Lanham Act protection to the [television series at issue], whether it was under copyright or not."[10]  *Atrium*, 565 F. Supp. 2d at 512.  Therefore, I reject Plaintiff's argument that the holding in *Dastar* should be limited to situations where no copyright exists.

Plaintiff claims that Defendants' conduct amounts to unfair competition in violation of

---

[10] Indeed, as noted in *Atrium*, courts have consistently applied *Dastar*'s rule to copyrighted material.  *See, e.g.*, *Atrium*, 565 F. Supp. 2d at 512-13 (citing cases); *LaPine v. Seinfeld*, No. 08 Civ. 128(LTS)(RLE), 2009 WL 2902584, at *15 (S.D.N.Y. Sept. 10, 2009); *Michael Grecco Photography, Inc. v. Everett Collection, Inc.*, 589 F. Supp. 2d 375, 387 (S.D.N.Y. 2008); *Hudson v. Universal Studios, Inc.*, No. 04 Civ. 6997(GEL), 2008 WL 4701488, at *8 (S.D.N.Y. Oct. 23, 2008).

Section 1125(a) of the Lanham Act.[11]  Specifically, Plaintiff claims that Defendant "CBS has engaged in false designation of origin and false descriptions of fact regarding Plaintiff and his work" and that the other Defendants "have individually published [the 9/11 Material] as part of their own media products appearing in television and the internet," (Compl. ¶ 80), and thereby "have caused or are likely to cause confusion, to cause mistake, or to deceive as to the origin of Plaintiff's Work among the public" resulting in "unfair competition in violation of 15 U.S.C. § 1125(a)," (Compl. ¶ 84).  This is the exact type of claim that the holding in *Dastar* prohibits.

In *Dastar*, the plaintiff brought a reverse passing off claim against Dastar Corp., distributor of the "Campaign" series of videos, which were about the allied campaign in Europe during World War II.  *Dastar*, 539 U.S. at 26-28.  The Campaign videos included footage from the "Crusade" television series but did not attribute the television series as the origin of this footage.  *Id*.  The Court held that

> reading the phrase 'origin of goods' in the Lanham Act in accordance with the Act's common-law foundations (which were not designed to protect originality or creativity), and in light of the copyright and patent laws (which were), we conclude that the phrase refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods.

*Id*. at 37 (emphasis omitted).  In other words, the "origin of goods" means the manufacturer of the goods, the publisher of a book or the producer of the television program.  The author of ideas

---

[11] Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

that are reproduced in tangible products or goods such as films, television programs, and books is not the "origin of goods" within the meaning of the Lanham Act.  Therefore, an author may not claim that the producer of the tangible product, by reproducing the author's ideas without proper attribution, has committed an actionable "false designation of origin."

Plaintiff argues that, independent of his role as the copyright holder, he is also "the producer" of his own products such that Defendants interfered with his "business" in violation of the Lanham Act.  This argument is meritless, as the Complaint clearly designates Defendants as the producers of "their own media products" that used the 9/11 Material.  Consumers who viewed the 9/11 Material were "not falsely informed about the origins of the [material] because [Defendants] did in fact produce" it.  *Atrium*, 565 F. Supp. 2d at 512.  Like the creator of the footage from Crusade in *Dastar*, Plaintiff is the originator, not the "producer of tangible goods" protected by the Lanham Act.  Plaintiff's Lanham Act claim amounts to nothing more than a copyrighted infringement claim disguised as a Lanham Act claim.  Stated differently, Plaintiff seeks to add additional protection to his copyrighted work through the Lanham Act.  *Dastar* prevents claims of this nature.  For these reasons, Defendants' motion to dismiss is granted as to Plaintiff's Lanham Act claim.

### C. *State Law Claims*

Finally, Defendants argue that the Copyright Act preempts all of Plaintiff's state law claims other than Plaintiff's claim for breach of contract.  A state law claim is preempted by the Copyright Act if (1) "the work at issue 'come[s] within the subject matter of copyright,'" and (2) "the right being asserted is 'equivalent to any of the exclusive rights within the general scope of copyright.'"  *Forest Park Pictures v. Universal Television Network, Inc.*, 683 F.3d 424, 429 (2d Cir. 2012) (quoting 17 U.S.C. § 301(b)).  Defendants argue Plaintiff's work clearly falls within

the subject matter of copyright, (Defs.' Br. at 18-19), and Plaintiff does not seem to contest this point, (*see* Pl.'s Br. at 15).

Therefore, for Plaintiff's state law claims to survive they cannot assert rights equivalent to any of the exclusive rights within the general scope of copyright. *See Forest Park Pictures*, 683 F.3d at 429. In order to meet this requirement, the Second Circuit generally requires that any state law claims include an extra element "instead of or in addition to the acts of reproduction, performance, distribution, or display . . . [and] the extra element changes the nature of the action so that it is qualitatively different from a copyright infringement claim." *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 716 (2d Cir. 1992) (emphasis and internal quotation marks omitted). Based on the extra element test, courts in this Circuit have found numerous state law claims preempted by the Copyright Act, including claims for (1) tortious interference with contractual relations, *see, e.g.*, *Am. Movie Classics Co. v. Turner Entm't Co.*, 922 F. Supp. 926, 932 (S.D.N.Y. 1996) (noting that in "the Second Circuit, it is well settled that claims for tortious interference based on the unauthorized publication of a work protected by the Copyright Act are preempted"); (2) tortious interference with business expectancy, *see, e.g.*, *Gary Friedrich Enters. LLC v. Marvel Enters., Inc.*, 713 F. Supp. 2d 215, 228 (S.D.N.Y. 2010) (plaintiff failed to allege any "extra element" apart from the rights protected by federal copyright law); (3) unjust enrichment, *see, e.g.*, *Briarpatch Limited, L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir.2004) ("While enrichment is not required for copyright infringement, we do not believe that it goes far enough to make the unjust enrichment claim qualitatively different from a copyright infringement claim."); *Avalos v. IAC/Interactivecorp.*, No. 13-cv-8351 (JMF), 2014 WL 5493242, at *7 (S.D.N.Y. Oct. 30, 2014) (plaintiff's unjust enrichment claim based wholly on defendants' unauthorized use of plaintiff's photographs); and (4) unfair competition

15

and misappropriation, *see, e.g.*, *Eyal R.D. Corp. v. Jewelex N.Y. Ltd.*, 784 F. Supp. 2d 441, 447 (S.D.N.Y. 2011) (dismissing unfair competition cause of action where the cause of action failed to allege "something different from copying, or the fruits of copying, or the intent or bad faith that can be inferred from the act of copying"); *WNET v. Aereo*, 871 F. Supp. 2d 281, 291-92 (S.D.N.Y. 2012) (unfair competition claim preempted because it was not qualitatively different from exclusive rights within general scope of Copyright Act and noting that "the Second Circuit has broadly precluded unfair competition claims involving misappropriation of plaintiff's creative works, suggesting as a general position that such claims satisfy the 'general scope' requirement for preemption").

Plaintiff repeatedly asserts in conclusory fashion that extra elements exist for each of his state causes of action. (Pl.'s Br. at 14-18.) However, he fails to identify what those extra elements are for each state cause of action; instead, he merely cites to other cases where courts have found extra elements present.[12] (*Id.* at 17-18.) The closest Plaintiff comes to identifying an extra element is his repeated assertion that his state law claims are based on damage to his business in addition to the unauthorized copying of his work. (*Id.* at 19-24.) However, Plaintiff fails to explain how the alleged damage to his business is the result of anything other than

---

[12] Plaintiff claims, for example, that "every one of the state claims" have as an extra element the "multiple promises set forth in the Amended Complaint that require CBS to do and avoid certain things which are separate from copyright infringement." (Pl.'s Br. at 15.) This assertion fails for several reasons. First, Defendants do not seek to dismiss Plaintiff's breach of contract claim so the existence of additional promises in the License Agreement is of no moment. Second, Plaintiff does not identify the "additional promises" purportedly contained in the Amended Complaint or link such promises to any other state cause of action other than his breach of contract cause of action. Third, as noted above, the existence of an extra element does not end the inquiry since any extra element must "change[] the nature of the action so that it is *qualitatively* different from a copyright infringement claim." *Computer Assocs. Int'l, Inc.*, 982 F.2d at 716 (citation omitted). Plaintiff fails to allege how these additional promises are qualitatively different from his copyright infringement claims. Fourth, the conclusory assertion of the existence of "additional promises" as purported extra elements without more is not sufficient to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. at 678; *see Eyal*, 784 F. Supp. 2d at 447 (dismissing state law claims as preempted where complaint states only existence of extra elements in conclusory fashion).

Defendants' unauthorized copying of Plaintiff's work.  *See Eyal*, 784 F. Supp. 2d at 447 ("[I]f the harm arises from the simple fact of copying, the claim falls within the Copyright Act and is preempted.").  Defendants' motion to dismiss Plaintiff's state law claims is therefore granted.[13]

### D. *Statutory Damages and Attorney's Fees*

Defendants argue that Plaintiff is not entitled to recover statutory damages or attorney's fees for his Copyright Act claims under 17 U.S.C. §§ 504-505.  (Defs.' Br. at 29.)  The Copyright Act specifies that "no award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for . . . any infringement of copyright commenced after first publication of the work and before the effective date of its registration."  17 U.S.C. § 412.  Here, Defendants point out that Plaintiff's copyright registrations were issued on September 9, 2014, and the infringing acts alleged by Plaintiff commenced "in about *2005-2006*."  (Defs.' Br. at 29 (quoting Compl. ¶ 34).)  In addition, Defendants also assert that Plaintiff is not entitled to statutory damages or attorney's fees because "a plaintiff may not recover statutory damages and attorney's fees for infringement occurring after registration if that infringement is part of an ongoing series of infringing acts and the first act occurred before registration."  (*Id.* at 30 (quoting *Troll Co. v. Uneeda Doll Co.*, 483 F.3d 150, 158 (2d Cir. 2007)) (internal quotation marks omitted).)

Plaintiff concedes that a literal reading of Section 412 would deny Plaintiff attorney's fees in this case.  (Pl.'s Br. at 27.)  Plaintiff also appears to acknowledge the accuracy of Defendants' analysis of the relevant statutes and the applicable Second Circuit case law related to statutory damages and attorney's fees related to claims brought pursuant to the Copyright Act.

---

[13] Defendants further argue that Plaintiff has failed to allege essential elements of his false advertising, tortious interference, and intentional tort claims.  (Defs.' Br. at 25-29.)  However, because I find Plaintiff's state law claims are preempted by the Copyright Act, I decline to consider these additional arguments.

(*Id*. at 27-28.)  Therefore, I find that Plaintiff is not entitled to statutory damages or attorney's fees for his Copyright claims under 17 U.S.C. §§ 504-505.  Plaintiff therefore may not pursue statutory damages or attorney's fees under 17 U.S.C. §§ 504-505.

However, Plaintiff separately requests that I award attorney's fees based on my equitable powers, and asserts that I am not constrained simply by the limits of the Copyright Act.  (*Id*. at 27-29.)  I find that it is premature at this stage of the litigation for me to make any determination concerning whether I should exercise my equitable powers and award attorney's fees.

## V.     Conclusion

 For the reasons stated herein, Defendants' motion to dismiss, (Doc. 58), is GRANTED IN PART AND DENIED IN PART.  Plaintiff may continue to pursue claims for copyright infringement against all Defendants, inducement to infringe copyright against Defendants CBS, BBC and T3Media, and breach of contract against Defendant CBS.  Defendants' motion to dismiss is granted as to all other claims in this action.  Plaintiff also may not seek statutory damages or attorney's fees under 17 U.S.C. §§ 504-505 for his claims of copyright infringement.

SO ORDERED.

Dated: January 19, 2017
         New York, New York

*Vernon Broderick*
Vernon S. Broderick
United States District Judge