UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
ANTHONY FIORANELLI, :
                                 Plaintiff, :
:
      -v- : 15-CV-952 (VSB)
:
CBS BROADCASTING, INC., : OPINION & ORDER
BBC WORLDWIDE AMERICAS, INC., :
T3 MEDIA, INC., TESTIMONY FILMS, :
PARAMOUNT PICTURES :
CORPORATION, MORNINGSTAR :
ENTERTAINMENT, INC., :
CREATIVE DIFFERENCES, LLC, JVCT :
PRODUCTIONS, INC., IPSE DIXIT, INC., :
and A&E TELEVISION NETWORKS, LLC, :
:
                                 Defendants. :
:
------------------------------------------------------------X

Appearances:

Hillel Ira Parness
Parness Law Firm, PLLC
New York, NY
*Counsel for Plaintiff*

Robert Penchina (New York, NY)
Elizabeth Seidlin-Bernstein (Philadelphia, PA)
Thomas Byrne Sullivan (New York, NY)
Ballard Spahr LLP
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

      Before me is Plaintiff Anthony Fioranelli's motion for leave to amend his complaint for the third time, which Plaintiff filed more than three years after commencing this litigation. (Doc. 120.) Because Plaintiff failed to act with diligence in seeking leave to amend and has not demonstrated good cause, his motion to amend is DENIED.

1

## I. Factual Background and Procedural History[1]

I assume the parties' familiarity with this case and refer the parties to my prior Memorandum & Order for a recitation of a more complete factual background. (*See* Doc. 71.)

Photojournalist Anthony Fioranelli commenced this action on February 9, 2015 by filing his initial complaint. (Doc. 1.) He alleges that Defendant CBS Broadcasting, Inc. ("CBS") entered into unauthorized sublicenses with BBC Worldwide Americas, Inc. ("BBC"), T3 Media, Inc. ("T3 Media"), Testimony Films, Paramount Pictures Corporation, Morningstar Entertainment, Inc., Creative Differences, LLC, JVCT Productions, Inc., Ipse Dixit, Inc., and A&E Televisions Networks, LLC (collectively, "Defendants"),[2] in violation of a 2002 agreement between Plaintiff and CBS, which granted CBS a nonexclusive license to use unique audiovisual footage recorded by Plaintiff at Ground Zero on September 11, 2001 and the days that followed (the "9/11 Material"). (Doc. 71, at 3–4.) Plaintiff registered two copyrights for the 9/11 Material in September 2014 (the "2014 copyright registrations"). (*Id.* at 3, 17.) Plaintiff's original complaint alleged claims for, *inter alia*, copyright infringement and inducement to infringe federally registered copyrights, as well as federal and state law unfair competition claims, state law claims for false advertising and interference with contractual relations, and a breach of contract claim against Defendant CBS. (Doc. 1, at 10–23.)

On July 31, 2015, certain Defendants moved to dismiss the complaint for lack of jurisdiction, (Docs. 49–50), and all Defendants moved to dismiss the complaint for failure to

---

[1] I limit my description of the factual and procedural history to only those matters that are relevant to the motion currently under consideration.

[2] Plaintiff's original complaint named additional defendants, including Brook Lapping Productions Ltd., RTW Productions, LLC, Adams County Productions LLC, Telemaco SRL, Firecracker Films, LLC, John and Jane Does 1-10, John Doe Corporations 1-10, and John Doe Entities 1-10. (Doc. 1.) These defendants, however, are not named in Plaintiff's second amended complaint, filed on February 8, 2017. (Doc. 72.) The original complaint also named Monkey Kingdom Ltd. ("MK") as a defendant; Plaintiff voluntarily dismissed his claims against MK on October 1, 2015. (Doc. 57.)

state a claim, (Docs. 51–52). In lieu of responding to those motions, Plaintiff filed an amended complaint on August 28, 2015. (Doc. 53.) Defendants moved to dismiss the amended complaint in its entirety on October 2, 2015, (Docs. 58–59), Plaintiff filed his opposition on November 3, 2015, (Doc. 61), and Defendants filed their reply on November 20, 2015, (Doc. 63). On January 19, 2017, I granted in part and denied in part Defendants' motion to dismiss. (Doc. 71.) Although I dismissed several of Plaintiff's claims, I determined that Plaintiff could pursue claims for copyright infringement against all Defendants; inducement to infringe copyright against Defendants CBS, BBC, and T3 Media; and breach of contract against Defendant CBS. (*Id.* at 18.) I further held that Plaintiff was not entitled to seek statutory damages or attorney's fees under 17 U.S.C. §§ 504–505, in relation to his claims of copyright infringement. (*Id.*) This determination was based on the language of § 412 of the Copyright Act, which proscribes the award of statutory damages or attorney's fees for "any infringement of copyright commenced after first publication of the work and before the effective date of its registration." 17 U.S.C. § 412. Plaintiff had alleged in his complaint that Defendants' infringement of the 9/11 Material commenced in about 2005 or 2006, but Plaintiff did not register the copyrights in question until September 9, 2014. (Doc. 71, at 17.)

On April 13, 2017, I entered a Case Management Plan and Scheduling Order, barring the addition of parties or causes of action after that date without obtaining my permission. (Doc. 78.) The Case Management Plan also set January 18, 2018 as the close of fact discovery. (*Id.*) At the request of the parties, on November 27, 2017, I extended the close of fact discovery to April 20, 2018. (Doc. 96.) On April 17, 2018, Attorney Hillel I. Parness filed a notice of appearance on behalf of Plaintiff. (Doc. 99.)[3] On that same day, Plaintiff requested—and I

---

[3] Plaintiff's former counsel, Attorney Maxim H. Waldbaum, was let go by his law firm, Eaton & Van Winkle LLP, which later disbanded, on December 19, 2017. (7/9 Tr. 4:3–4.) ("7/9 Tr." refers to the transcript of the conference

granted—a thirty-day hold on all discovery deadlines, (Docs. 100, 102); I extended that hold by an additional thirty days on May 23, 2018, (Doc. 104). A subsequent request by Plaintiff to further revise the Case Management Plan was denied. (Doc. 135.) Both fact and expert discovery have been closed since June 22, 2018.

On June 14, 2018, Plaintiff submitted a letter notifying me that an entity by the name of Multi Media Network News LLC ("MMNN"), Plaintiff's single-member limited liability company, had filed a registration with the U.S. Copyright Office on July 30, 2004 (the "2004 copyright registration"), for the website, www.multimedianetworknews.com. (Doc. 105.)[4] Plaintiff's letter explained that the website contained certain video clips and still images excerpted from the 9/11 Material protected by the 2014 copyright registrations. (*Id.*) Plaintiff requested a conference to discuss "add[ing the 2004 copyright registration] to the complaint, and reinstat[ing] Mr. Fioranelli's claims for the enhanced damages to which this registration potentially entitles him." (*Id.*) On July 9, 2018, Magistrate Judge Stewart D. Aaron—to whom this matter has been referred for general pretrial proceedings, (Doc. 107)—held a status conference addressing Plaintiff's request for leave to amend and other discovery issues. (*See generally* 7/9 Tr.) At that conference, Magistrate Judge Aaron ordered the parties to formally brief Plaintiff's request for leave to further amend the complaint. (*Id.* at 34:12–18.) Plaintiff filed his motion, along with supporting documents, on July 23, 2018. (Docs. 120–22.)

---

held by Magistrate Judge Stewart D. Aaron on July 9, 2018, (Doc. 118).) Attorney Robert D. Katz, who also entered an appearance in this action, left Eaton & Van Winkle LLP on February 28, 2018. (*Id.* at 12:17–23.) It appears that Attorneys Waldbaum and Katz ceased work on this matter after Waldbaum left the firm, (*id.* at 13:13–17), which prompted Plaintiff to obtain new representation.

[4] In fact, Plaintiff filed a copyright registration for a CD-ROM, which contained a full download of the contents of the MMNN website. (*See* Pl.'s Br. 5; 7/9 Tr. 21:20–22:5.) ("Pl.'s Br." refers to the Memorandum of Law in Support of Motion to Amend Complaint by Addition of Earlier Copyright Registration, filed on July 23, 2018, (Doc. 121).)

Defendants filed their opposition to the motion on August 6, 2018, (Doc. 126), and Plaintiff filed his reply on August 13, 2018, (Doc. 132).

## II.     Legal Standard

It is "within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir.2007). While Rule 15(a) of the Federal Rules of Civil Procedure states that the Court "should freely give leave when justice so requires," "[w]here a scheduling order has been entered governing, among other things, the amendment of pleadings, the lenient standard under Rule 15(a) . . . must be balanced against the requirement under Rule 16(b) that a court's scheduling order 'shall not be modified except upon a showing of good cause.'" *Martell Strategic Funding LLC v. Am. Hosp. Acad.*, No. 12-CV-627 (VSB), 2017 WL 2937649, at *2 (S.D.N.Y. July 10, 2017) (quoting Fed. R. Civ. P. 16(b)(4)); *see also Holmes v. Grubman*, 568 F.3d 329, 334–35 (2d Cir. 2009); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) (holding that "a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause"). "[A] finding of 'good cause' depends on the diligence of the moving party." *Parker*, 204 F.3d at 340; *see also Holmes*, 568 F.3d at 335.

"[W]here the substance of the proposed amendment was known to the movant prior to the deadline for amending pleadings, but the movant nevertheless failed to act, courts have denied leave to amend under Rule 16." *380544 Can., Inc. v. Aspen Tech., Inc.*, No. 07 Civ. 1204(JFK), 2011 WL 4089876, at *3 (S.D.N.Y. Sept. 14, 2011) (collecting cases); *see also iMedicor, Inc. v. Access Pharm., Inc.*, 290 F.R.D. 50, 52 (S.D.N.Y. 2013) ("[T]he good cause standard is not satisfied when the proposed amendment rests on information that the party knew, or should have

known, in advance of the deadline." (quoting *Enzymotec Ltd. v. NBTY, Inc.*, 754 F. Supp. 2d 527, 536 (E.D.N.Y. 2010))).

A court "also may consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice" the non-moving party. *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007). An amendment is prejudicial to the non-moving party if it "would 'require the opponent to expend significant additional resources to conduct discovery and prepare for trial' or 'significantly delay the resolution of the dispute.'" *Ruotolo v. City of New York*, 514 F.3d 184, 192 (2d Cir. 2008) (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)).

### III. Discussion

In his opening brief, Plaintiff argues that amendment is appropriate under Rule 15(a) of the Federal Rules of Civil Procedure. (Pl.'s Br. 10.) Defendants respond that since a scheduling order was in place, the correct standard is contained in Rule 16. (Defs.' Opp. 4.)[5] Defendants are correct: the applicable standard for deciding Plaintiff's motion to amend is the "good cause" standard set forth in Rule 16(b), which turns on whether or not Plaintiff acted with diligence in seeking leave to amend.

Plaintiff concedes that he was aware of the 2004 copyright registration long before filing his original complaint in this action. (*See* Pl.'s Br. 15 ("To be sure, the 2004 copyright registration could have been included from the start of this case . . . .").) Plaintiff filed his complaint on February 9, 2015, (Doc. 1), subsequently amended the complaint on two occasions, (Docs. 53, 72), and yet, did not bring the 2004 copyright registration to my attention until June

---

[5] "Defs.' Opp." refers to Memorandum of Law in Opposition to Plaintiff's Motion to Amend Complaint, filed on August 6, 2018. (Doc. 126.)

14, 2018, (*see* Doc. 105)—nearly three-and-a-half years later, on the eve of the discovery cutoff date, and after the deadline for amendments had long since passed.

Where the deadline for asserting additional claims or defenses set forth in the scheduling order has passed, courts routinely deny leave to amend the pleadings if the moving party delayed in seeking leave to amend for a period of five months or more. *See, e.g.*, *Martell Strategic Funding LLC*, 2017 WL 2937649, at *4 (denying leave to add an affirmative defense when defendants were aware of the facts underlying the defense for more than two-and-a-half years before seeking leave to amend); *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003) (affirming denial of motion to amend where party delayed "more than one year" and discovery was complete); *Tardif v. City of New York*, No. 13-CV-4056 (KMW) (FM), 2016 WL 2343861, at *5 (S.D.N.Y. May 3, 2016) (finding "lengthy delay" of five months fell "far short of the diligence necessary to show good cause"); *Jackson v. Roslyn Bd. of Educ.*, 596 F. Supp. 2d 581, 586 (E.D.N.Y. 2009) (finding plaintiff's delay of nearly five months evinced "a lack of diligence"); *see also Rambarran v. Mount Sinai Hosp.*, No. 06 Civ. 5109(DF), 2008 WL 850478, at *3 (S.D.N.Y. Mar. 28, 2008) (denying motion to amend where plaintiff sought to amend complaint three-and-a-half months after deadline). Plaintiff's three-year delay here far exceeds the five-month mark.

Plaintiff insists, however, that the lengthy delay in seeking to add the 2004 copyright registration to his complaint was not due to lack of diligence on his part. Rather, Plaintiff explains that he told his prior counsel, Attorney Maxim Waldbaum, about the 2004 copyright registration during their initial meeting in May 2014. (Pl.'s Decl. ¶ 16.)[6] According to Plaintiff,

---

[6] "Pl.'s Decl." refers to the Certification of Anthony Fioranelli in support of Plaintiff's Motion to Amend Complaint by Addition of Earlier Copyright Registration, filed on July 23, 2018, (Doc. 122).

7

at that meeting, one of Waldbaum's first questions was whether Plaintiff had any registered copyrights; he told Waldbaum about the registration of the MMNN website and Waldbaum purportedly responded, "it's not the same." (*Id.* ¶ 18.) When Plaintiff pressed the issue, Waldbaum replied that the registration was "just different." (*Id.*) Plaintiff and Waldbaum had no further conversations regarding the 2004 copyright registration. (*Id.*)

At the July 9, 2018 hearing before Magistrate Judge Aaron, Attorney Waldbaum denied that Plaintiff had ever mentioned the 2004 copyright registration to him, stated that Plaintiff told him that Plaintiff "had no registrations," and noted that he conducted a "thorough investigation" with Plaintiff before filing the lawsuit. (7/9 Tr. 8:19–9:8; 10:17–18.) Waldbaum also emphasized that there was no reference to the 2004 copyright registration in the substantial set of documents Plaintiff produced to Defendants over the course of this litigation. (*Id.* at 9:8–16.)

Even accepting that Plaintiff advised his prior counsel of the 2004 copyright registration prior to filing this lawsuit, Plaintiff cannot demonstrate good cause for belatedly seeking to add the 2004 copyright registration to his complaint. It is well established that "the failure of an attorney to recognize a potential cause of action is not a sufficient justification for granting leave to amend a complaint." *Yurman Design Inc. v. Chaindom Enters., Inc.*, No. 99 Civ. 9307(JFK), 2001 WL 725291, at *2 (S.D.N.Y. June 27, 2001); *see also Davidowitz v. Patridge*, No. 08 Civ. 6962 (NRB), 2010 WL 1779279, at *4 (S.D.N.Y. Apr. 23, 2010) ("[L]itigants are generally bound by the professional conduct of the attorneys they choose to represent them, although the conduct of counsel may give rise to a claim for malpractice by the client." (internal quotation marks omitted)); *Lastra v. Weil, Gotshal & Manges LLP*, No. 03 Civ. 8756 (RJH)(RLE), 2005 WL 551996, at *4 (S.D.N.Y. Mar. 8, 2005) ("Absent extraordinary circumstances, a client assumes the risk of his attorney's actions and is bound even by the consequences of his

attorney's negligence."); *Church of Scientology Int'l v. Time Warner, Inc.*, 92 CIV. 3024(PKL), 1998 WL 575194 at *2 (S.D.N.Y. Sept. 9, 1998) (denying plaintiff's request to amend the complaint after a new attorney identified a new legal theory), *aff'd sub nom. Church of Scientology Int'l v. Behar*, 238 F.3d. 168 (2d Cir. 2001).

*Dunham v. City of New York*, 295 F. Supp. 3d 319 (S.D.N.Y. 2018), on which Plaintiff relies, is easily distinguishable. Although the *Dunham* court did permit plaintiff, who was incarcerated and therefore largely unable to oversee the work of his attorney, to amend his complaint after a three-year delay, it did so on the basis of "'extraordinary circumstances'—the well-established and detailed allegations of [plaintiff's counsel's] misconduct." *Id.* at 328. The amendment in *Dunham* was delayed first because plaintiff's counsel failed for several months to file an amended complaint expressly authorized by the district court; next, because counsel was subsequently suspended from the practice of law entirely and failed to advise plaintiff of that suspension; and finally, because after the court held the matter in abeyance until counsel was reinstated, counsel again failed to respond to communications from both plaintiff and the court. *Id.* at 324–25. Such "extraordinary circumstances" are entirely absent here, where Plaintiff alleges only that he notified Attorney Waldbaum of the 2004 copyright registration in May 2014, that Waldbaum responded that the registration should not be included in Plaintiff's complaint, and that they did not discuss the issue again. (Pl.'s Decl. ¶¶ 16–18.) On their face, these claims do not appear to assert misconduct by Waldbaum. In any event, even assuming that Plaintiff's assertions could be characterized as allegations of some form of misconduct, they are precisely the "vague allegations by a plaintiff regarding his attorney's misconduct [that] are 'insufficient to establish good cause for' belated amendments." *Dunham*, 295 F. Supp. 3d at 328 (quoting *Guity*

*v. Uniondale Union Free Sch. Dist.*, No. CV 12-1482(SJF)(AKT), 2014 WL 795576, at *5 (E.D.N.Y. Feb. 27, 2014)).

Moreover, there appear to be legitimate strategic reasons why Attorney Waldbaum may have elected not to bring claims based on the 2004 copyright registration. As Defendants point out in their opposition, the 2004 copyright registration is owned by MMNN, not by Plaintiff himself. (Defs.' Opp. 11–12.) Furthermore, the 2004 copyright registration applies to a website containing video clips and still images excerpted from the 9/11 Material. (*Id.* at 9–11.) Therefore, the website may well be a compilation that is derivative of the 9/11 Material—*see* 17 U.S.C. § 101 (defining "compilation" as "a work formed by the collection and assembling of preexisting materials," and a "derivative work" as "a work based upon one or more preexisting works")—and MMNN does not hold a copyright in the 9/11 Material. *Cf. Morris v. Bus. Concepts, Inc.*, 283 F.3d 502, 506 (2d Cir. 2002) ("[U]nless the copyright owner of a collective work also owns all the rights in a constituent part, a collective work registration will not extend to [that] constituent part.").[7] As Magistrate Judge Aaron commented during the parties' July 9, 2018 conference, the decision not to include the 2004 copyright registration in this lawsuit was arguably a "tactical" one. (7/9 Tr. 30:20–21.)

Finally, even if Plaintiff had acted with diligence—which he most certainly did not—I find that granting the proposed amendment at this late stage of the litigation would cause significant delay and would prejudice Defendants. *See Ruotolo*, 514 F.3d at 192 (noting that an

---

[7] Defendants cite a number of deficiencies that would render Plaintiff's proposed amendment futile, including the derivative nature of the work protected by the 2004 copyright registration, the fact that the 2004 copyright registration is owned by an entity other than Plaintiff, and the fact that a claim by MMNN would arguably be time-barred. (Defs.' Opp. 8–16; *see also* 17 U.S.C. § 507(b) (providing a three-year statute of limitations for copyright claims).) Although I decline to base my denial of Plaintiff's request to amend on the ground that such an amendment would be futile, I note that even if the amendment were permitted, Plaintiff would face an uphill battle at the motion-to-dismiss stage.

amendment is prejudicial where it "would 'require the opponent to expend significant additional resources to conduct discovery and prepare for trial' or 'significantly delay the resolution of the dispute'" (quoting *Block*, 988 F.2d at 350)). Permitting Plaintiff to add an additional copyright registration to this lawsuit after discovery has closed would substantially prolong this litigation, which has already been pending for over four years. Plaintiff argues that the proposed amendment would not require Defendants to produce any additional discovery as the material protected by the 2004 copyright registration is also covered by the 2014 copyright registrations and, therefore, does not give rise to any new acts of alleged infringement. (Pl.'s Br. 14–15.) "Discovery, however, is not a one-way street designed to allow plaintiffs to collect evidence in support of their claims. It is also a mechanism for defendants to accumulate evidence to defend themselves and to test the evidence of their opponents." *Davidowitz*, 2010 WL 1779279, at *5. Indeed, Plaintiff appears to recognize that his proposed amendment would almost certainly prompt additional discovery requests by Defendants. (7/9 Tr. 29:9–11.)

Moreover, it is clear that Plaintiff's proposed amendment would lead to additional motion practice, as Defendants proffer in their opposition numerous reasons why the amendment fails to state a claim on which relief may be granted. (Defs.' Opp. 8–16.) I find that the cost and delay that would result from authorizing Plaintiff's amendment justify denial of Plaintiff's motion. S*ee Mid Atlantic Framing, LLC v. Varish Constr., Inc.*, No. 3:13-CV-01376 (MAD/DEP), 2017 WL 4011260, at *5 (N.D.N.Y. Sept. 11, 2017) (affirming denial of request to amend where "case [wa]s nearly four-years old and amending the complaint at th[at] stage w[ould] undoubtedly lead to another motion to dismiss and additional discovery").

## IV. Conclusion

For the reasons stated herein, Plaintiff's motion to file a third amended complaint, (Doc. 120), is DENIED. The parties are directed to meet and confer and, on or before April 8, 2019, the parties shall submit a joint letter outlining a proposed briefing schedule for their anticipated summary judgment motions.

SO ORDERED.

Dated: March 6, 2019
      New York, New York

_____
Vernon S. Broderick
United States District Judge